MORA H. McGEE, Appellant, v. THOMAS L. LAVELOCK et al., Respondents.

Kansas City Court of Appeals, March 3, 1890.

1. **Contract**: LEASE OF ABSTRACT BOOKS : CONSTRUCTION. Where a lease of a set of abstract books required the lessee to keep said books posted up to the date of its expiration in a business-like manner, but sets out no other mode of doing such work, small memorandum books used in this work of posting by the lessee for taking memoranda from the county records in the recorder's office to be entered in the abstract books in the lessee's office, do not become a part of said abstract books, nor become at the end of the term the property of the lessor.

2. **Practice**: PAROL EVIDENCE : CONFLICT OF. Conceding, in this case, a right to any evidence outside the written contract, which seems to be complete in itself, as such evidence, consisting mainly of the differing opinions of witnesses, was passed upon by the trial court, an appellate court cannot review the finding.

*Appeal from the Ray Circuit Court.*—HON. J. M. SANDUSKY, Judge.

AFFIRMED.

*C. T. Garner & Son,* for the appellants.

(1) That, under the law and the evidence in this cause, the finding and judgment of the court should have been for the plaintiff. Replevin suits are said to be in some respects *sui generis,* and the inclination of the court of this state has been to give them a flexibility sufficient to meet exigencies and adjust all equities arising in such actions to properly protect the interests, and equitably adjust the rights of the parties. *Hickman v. Dill,* 32 Mo. App. 509. Upon the principles enunciated in the above case, it will be apparent that the finding of the trial court was erroneous and for the wrong party. (2) Mr. Greenleaf, in his valuable work on evidence, states the rule to be, that a writing is to be read in the light of surrounding circumstances in order more perfectly to understand the intent and meaning of the parties. 1 Greenl. Ev., sec. 277. The same author says that a contract should not be so construed that it would be unconscientious and unjust to enforce against either party. (3) It is held by courts of equity that in suits for specific performance of an agreement, it may be shown that a decree would be against equity and justice, and parol evidence is admitted to show that the claim is unjust although such evidence may contradict that which is written and especially are these equitable principles applicable where the suit is between the original parties to the instrument. 1 Greenleaf on Evidence, sec. 296; Story on Equity Jurisprudence, sec. 161, p. 154, sec. 162. If the meaning of a contract is not clear, the court takes the light of the circumstances in which

the contract is made and the practical interpretation the parties by their conduct may have given it. *Lowber v. Bands*, 2 Wall. 737; Anderson's Dictionary of Law, 250. (4) It is a fundamental rule that the court may look not only to the language employed, but to the subject-matter and the surrounding circumstances, and avail themselves of the light the parties, by their conduct, have furnished as means of giving the proper construction to a contract. (5) The supreme court says in *Berry v. Craig*, 3 Mo. 516 : In order to ascertain the intention of the parties we must look not only to the words but to the subject-matter of the contract. Again in the case of *Shultz v. Bailey*, 40 Mo. 69, the supreme court says the purport of the instrument is to be gathered from the general tenor of it, and not from any particular clause. And again in *Patterson v. Camden*, 25 Mo. 13, the supreme court says in construing a written contract the acts of the parties are entitled to great weight. And again in the case of *Pavey v. Burch*, 3 Mo. 447, they say contracts are to be considered according to their meaning and intent. (6) That although the contract may be silent as to the minute books, that does not determine the question of ownership. The court must look to extrinsic facts and circumstances, the duties and obligations imposed upon the parties under the contract and all the facts and circumstances in evidence, the subject-matter of the contract, the property leased, the acts of the parties and all the surrounding equities in determining the question of the ownership of the property in controversy.

*J. L. Farris*, for the respondents.

(1) The terms of a written contract are to be understood in their ordinary and popular sense, and the plain and obvious meaning of the words will be applied in ascertaining the intention of the parties thereto.

1 Greenl. Ev. [14 Ed.] sec. 278; *Burman v. Banks*, 45 Mo. 350; *Rubey v. Forcht*, 21 Mo. App. 157–9; *Fruin v. Railroad*, 89 Mo. 404. (2) The written contract defines the *status* of the parties, and it is the inflexible rule, that unambiguous terms of a written contract cannot be supplied or contradicted, varied or enlarged by parol testimony. 1 Greenl. Ev. [14 Ed.] sec. 275; 2 Kent's Com. [12 Ed.] p. 556; 2 Parson on Cont. [6 Ed.] p. 548; Bishop on Cont. [Enlarged Ed.] secs. 380–2; *Bunce v. Beck*, 43 Mo. 279; *Belch v. Miller*, 32 Mo. App. 396. (3) In the absence of fraud a party cannot avoid a written contract, or modify its terms, by showing it was not read when signed. *Ware v. Starkey*, 80 Va. 191. (4) In the absence of fraud, the court will not consider the understanding of either party, in determining their rights under a written contract, if its terms are perfectly clear and free from ambiguity. *Warren v. Wheeler*, 8 Met. 97; *Bigelow v. Collamore*, 5 Cush. 226; *Harper v. Gilbert*, 5 Cush. 417. (5) The appellant contracted with reference to the posting and management of her abstract. The purposes of the parties as indicated by the agreement and the evidence herein show a full compliance with the obligations assumed. *Hovey v. Pitcher*, 13 Mo. 191. (6) The appellant in violation of the settled rule seeks to engraft on the written contract two important and material obligations, which the agreement does not impose, viz. : *First.* To post said abstract by means of minutes. *Second.* To deliver said minutes with the abstract. *Pearson v. Carson*, 69 Mo. 550; *Hair v. Walmsley*, 32 Mo. App. 117–8.

ELLISON, J.—This is an action of replevin wherein plaintiff claims to be the owner and entitled to the possession of certain "minute books" and plats alleged to be a part of a set of abstract books of the title to lands in Ray county. The trial was without a jury and resulted in a finding and judgment for defendant.

The following is, in all material respects, a correct statement of the case : In September, 1881, T. N. Lavelock leased from plaintiff, by written lease, "all of the abstract books which were prepared by George N. McGee, deceased, and owned by him at the time of his death and now owned by" plaintiff. Defendant, "in consideration of the leasing of said abstract books, agrees with the said parties of the first part to carefully post said books, by properly transferring and entering in said books an abstract of each conveyance affecting the title of real estate that has been or may hereafter be filed in the recorder's office of Ray county, Missouri, before the first day of May, 1882, and to keep the same so posted to the date of the expiration of the lease, and to do the work in a business-like manner. And the said party of the first part is to receive as full compensation for his services in posting said books, as aforesaid, to May 1, 1882, all the proceeds arising from the same to said date, he paying for abstract blanks and advertising during said time. And from May 1, 1882, to the expiration of the lease, all advertisements, abstract blanks and such other expense as may be necessary, are to be paid out of the proceeds arising from the using of said books, and the remainder of the proceeds are to be divided equally " between the parties. "And the amount of money received by the said party of the second part shall fully compensate him for his services in posting said books as aforesaid." The amount of compensation to Lavelock was afterwards increased from fifty to seventy-five per cent. The books in controversy, called minute books, were not a part of the books turned over to Lavelock by plaintiff under the lease. They came into existence since, and the question is, did they come into existence in such a way as to become a part of the abstract and thereby the property of plaintiff.

They were made up as the result of a mode which defendant adopted in posting the books. The abstracts

are made by taking abstracts of conveyances off of the deed records at the recorder's office and entering them, in a convenient manner for reference, on the abstract books. It seems, in taking off conveyances from the county records, instead of taking the abstract books to the recorder's office and transcribing therein in the first instance, defendant, on account of the size and inconvenient handling of such abstract books, would transcribe from the county deed records onto these small minute books, which he would take to his office and re-transcribe onto the abstract proper. This was merely his *mode or method* of doing the work on the abstract books, which was required of. him by the contract. I am not able to see how, under the terms of the contract, it could have the effect of making such memoranda the property of the plaintiff. Any other mode which defendant might have seen fit to have adopted, which resulted in properly posting or keeping up the abstract, would have answered the same purpose. Suppose defendant had, at different times, transcribed his work at the recorder's office on separate sheets. of loose paper, and, after each entry on the abstract books at his own office, had destroyed these sheets of paper, would he have injured plaintiff, or would he have destroyed her property?

The contract does not set out or refer to how the books shall be posted, further than to say that it shall be done in a "business-like manner." It does not provide that minute books shall be kept or preserved, or were to become a part of the abstract. If defendant has kept the abstract books posted in "a business-like manner" and has turned them back to plaintiff, he has certainly complied with the terms of his contract.

Conceding a right to any evidence outside the written contract, which seems to be complete within itself, as to what would properly be considered a part

of the abstract, that evidence which seemed to partake much of the mere opinion of the witnesses differed, and, as the court has passed upon the facts, we cannot pass upon the propriety of such finding, even did we think the oral testimony applicable to the case as controlled by the agreement of the parties.

We have considered the argument advanced by counsel for appellant, which, though plausible and well put, does not overcome the points which occur to us as sustaining the action of the circuit court.

Judgment affirmed.   All concur.